UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    DAVID RUSSELL BOGARIN,             Case No. 10-35159-dof
                                                               Chapter 7 Proceeding
        Debtor.                                      Hon. Daniel S. Opperman
_____/
COLLENE K. CORCORAN,

    Plaintiff,

v.                                                                            Adversary Proceeding
                                                                            Case No. 11-3057-dof

DAVID RUSSELL BOGARIN,

    Defendant.
_____/

Opinion Regarding Plaintiff's Objection to Discharge

Introduction

    Collene Corcoran, the Chapter 7 Trustee and Plaintiff in this action, seeks to have the discharge denied to the Debtor, David Bogarin, the Defendant in this adversary proceeding. Plaintiff's adversary proceeding is based upon 11 U.S.C. § 727(a)(3) and (a)(5) and centers upon the Defendant's receipt and subsequent expenditure of $345,651.07 in October, 2007, as a result of the settlement of a personal injury claim. Plaintiff alleges that Defendant has not sufficiently explained the expenditure of these monies. Defendant denies Plaintiff's allegations and seeks dismissal of Plaintiff's Complaint and the granting of a discharge by this Court. For the reasons stated in this Opinion, the Court finds that the Defendant is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(3) and (5).

Findings of Fact

    The Court conducted a Trial of this adversary proceeding on November 22, 2011, and

1

admitted into evidence Exhibits 1 - 7. The Court heard testimony from the Plaintiff, Collene Corcoran, and the Defendant, David Bogarin. The Court makes the following findings of fact from reviewing the Exhibits, the docket of the Court, and from the testimony of the parties.

The Defendant was involved in a serious automobile accident and sustained significant personal injuries. In October, 2007, the Defendant settled his personal injury lawsuit for $525,000.00 and received $345,651.07 after payment of costs and attorney fees. Since Defendant was seriously injured in this automobile accident, he incurred significant medical expenses, as well as normal living expenses. For a period of time, Defendant and his family utilized credit cards and family loans to pay these expenses. Once the Defendant received his settlement, he paid a number of these bills and left the rest in a joint account with National City Bank, a separate mutual fund account in the Defendant's name only, and, as testified at Trial, a Charles Schwab account.

In May, 2008, the Defendant and his wife separated and their divorce was concluded in late, 2008. From May, 2008, the Defendant paid the mortgage obligation on his house in which his wife and children lived in and he also incurred rent expense of $1,275.00 per month. The Defendant was finally able to return to work in August, 2009, and has been employed ever since in the automobile sales industry. Presently, the Defendant is the finance and business manager for Dick Scott Dodge. The Defendant filed his voluntary petition seeking relief under Chapter 7 with this Court on September 25, 2010. The Defendant did not disclose the $345,651.07 personal injury award in his Schedules or Statement of Financial Affairs because he was not required to do so. The Defendant did, however, testify at the first meeting of creditors that he received this money in 2007. The Trustee's interest was piqued by this disclosure because she believed that potential fraudulent conveyances could exist that would generate monies for the bankruptcy estate. As a result of this interest, the Trustee requested that the Defendant explain the disposition of the $345,651.07.

The Defendant attempted to do so in a written response to the Plaintiff's attorney's request

of December, 2010. This response, admitted as Exhibit 3 and in the Defendant's own handwriting, can be summarized as explaining the disposition of the funds as follows:

```
$150,000 payment of credit card obligations
$ 45,000 repayment of loan from father
$ 12,000 mortgage payments during divorce
$ 40,800 rent payment of $1,275 (May, 2008 - December, 2010)
$ 15,000 furniture
$  3,000 payment to wife
$ 13,000 payment to ex-wife per judgment of divorce
$ 16,000 purchase of Mountaineer for wife
$294,800
```

The Defendant did not disclose the name or address of his father or ex-wife until he gave the Trustee a copy of a page from his father's and mother's account with Chase which evidenced a deposit of $35,000. The Defendant did supply copies of his tax returns, pay stubs, and various bank account statements. The bank account statements are unrelated to the receipt or withdrawal of monies from the lawsuit.

The Plaintiff sent a request for admissions, interrogatories, and request for production of documents to the Defendant and the Defendant responded to these requests. By way of definition, these discovery requests define the term "identify" as follows:

> "State names, titles, and the present residential addresses, or if unknown, the last known residential addresses, employer's current address and telephone number, of such person or persons."

The pertinent discovery requests are as follows:

Requests for Admission

1. Admit that you received the Settlement Sum.

   **Answer: Admit**

2. Admit that you have not provided the Trustee with any bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments that evidence your alleged payment of "approximately $150,000 in credit card debt", as stated in the Memo.

   **Answer: Admit**

3. Admit that you have not provided the Trustee with any bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments that evidence your alleged payment of "$45,000 to my father", as stated in the Memo.

**Answer: Admit**

4. Admit that you have not provided the Trustee with any bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments that evidence your alleged payment of mortgage payments for your wife and daughter of "$12,000 for six months", as stated in the Memo.

**Answer: Admit**

5. Admit that you have not provided the Trustee with any leases, rental agreements, land contracts, bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments that evidence your alleged payment of rent of "$1,275 per month", as stated in the Memo.

**Answer: Admit**

6. Admit that you have not provided the Trustee with any bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments that evidence your alleged purchase(s) of "furniture and other items for my rental approximately $15,000", as stated in the Memo.

**Answer: Admit**

7. Admit that you have not provided the Trustee with any bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments that evidence your allegations that you "[g]ave my wife over $3,000 cash and then on divorce gave my ex-wife another $13,000", as stated in the Memo.

**Answer: Admit**

8. Admit that you have not provided the Trustee with any bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments that evidence your allegation that you "bought my wife a 2006 Mountaineer for $16,000", as stated in the Memo.

**Answer: Admit**

9. Admit that you have not provided the Trustee with any bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments that evidence your allegation that you "[p]aid many thousands for doctors, rehad(sic), physical therapy over 4 years, while receiving $1,900.00 per month in disability", as stated in the Memo.

**Answer: Admit**

Interrogatories

3. Do you claim that there never existed any leases, rental agreements, land contracts, bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments that evidenced your disposition of the Settlement Sum? If your answer is in the affirmative, identify each document evidencing, referring, or relating to such allegation, and identify each person known or believed by you, or anyone acting on your behalf having any knowledge with respect to such allegation.

**Answer: No. My father, my ex-wife, my personal injury attorney.**

4. Do you claim that you never had possession of any leases, rental agreements, land contracts, bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments that evidenced your disposition of the Settlement Sum? If your answer is in the affirmative, identify each document evidencing, referring, or relating to such allegation, and identify each person known or believed by you, or anyone acting on your behalf having any knowledge with respect to such allegation.

**Answer: No. My father, my ex-wife, my personal injury attorney. There may have been a number of documents as described in Interrogatory #5, but I do not have any of those documents nor do I know where they are.**

5. Identify all documents that evidence the disposition of the Settlement Sum, including, but not limited to all leases, rental agreements, land contracts, bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments, whether or not such documents are currently in existence or in your possession or control

**Answer: Documents like leases, rental agreements, land contracts, bank statements, cancelled checks, etc., may have existed at some time.**

9. Identify every person that you intend to call or may call as either a fact witness or an expert witness at the trial of this adversary proceeding. For each witness state and describe in detail the subject matter on which each witness is expected to testify, the substance of the facts and opinions to which each witness is expected to testify, a summary of the grounds for each opinion, the qualifications of each expert witness, identify all documents which will or may be reviewed or relied upon by each witness, identify all correspondence between Defendant and each witness that relates to each witness' testimony in this matter, and identify all recorded statements of each witness that relate to this matter.

**Answer: My father, my ex-wife. They would testify as to what happened to all the money that I received in my settlement.**

Request for Production of Documents

In regard to the Request for Production of Documents, the Plaintiff requested the following documents.

1. Produce all documents identified in the above Interrogatories, and indicate on each

5

document furnished the number of the Interrogatory to which such writing or document pertains.

      2.      Produce all documents relied upon but not specifically identified by Defendant in answering the above Requests for Admission and Interrogatories.

      3.      Produce all documents evidencing your disposition of the Settlement Sum, including but not limited to all leases, rental agreements, land contracts, bank statements, cancelled checks, check registers, bills, invoices, receipts, and/or domestic court orders or judgments.

      4.      Produce all documents that Defendant will or may offer into evidence at the time of trial.

In response, the Defendant gave the identical response as follows:

**Answer: The only documents that I have in my possession are the settlement letter from my prior attorney and the memo that I prepared for the Trustee. The Trustee already has these documents.**

At the November 22, 2011, Trial, the Defendant testified consistently with his handwritten memo, but also testified that he purchased a Mercury Sable from his brother, Daniel Bogarin, who is employed as the sales manager at Sesi Lincoln Mercury as a partial explanation for the expenditure of the settlement proceeds. The Defendant also testified that he bought the 2006 Mountaineer from his brother at Sesi Lincoln Mercury as well. In addition, the Defendant testified that he had opened up a Charles Schwab account with $20,000 to $25,000 right after his accident proceeds were received and had lost money, ending up with $10,000, which he then deposited in his account at National City. None of these facts were disclosed in the Defendant's handwritten response or the formal responses to the discovery requests. The Defendant also testified that he was aware that a credit report could be ordered that would disclose the various names and other details regarding the credit cards that he had. The Defendant testified that he was aware of this possibility given his experiences in the automobile sales industry.

The Defendant testified that he had all of the records regarding his bank accounts and credit card statements, but that these records were accidently destroyed when he moved from his home into his apartment in 2008. The Defendant also explained that he attempted to procure statements from

PNC Bank, the successor of National City Bank, but was unsuccessful in doing so.

## Statement of Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) (objections to discharge).

## Applicable Law

### 11 U.S.C. § 727(a)(3): Concealing or Destroying Financial Information

Section 727(a) of the Bankruptcy Code provides that a debtor is entitled to a discharge unless an exception applies. Although exceptions to discharge are strictly construed against a creditor, *see Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998), "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Wazeter v. Michigan National Bank (In re Wazeter)*, 209 B.R. 222, 226 (W.D. Mich. 1997). Pursuant to Federal Rule of Bankruptcy Procedure 4005, the burden of proof in objecting to a discharge under Section 727 is on the plaintiff and must be established by a preponderance of the evidence. *Barclays/American Bus. Credit, Inc., v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994).

Section 727(a)(3) of the Code states that the court shall grant a debtor a discharge unless,

> The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

A condition precedent to discharge is that the debtor must provide to his creditors enough information to ascertain the debtor's financial condition and to track his finances with substantial accuracy for a reasonable period in the past to the present. *Wazeter*, 209 B.R. at 227 (citing *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)). Creditors and courts are not required to speculate

7

regarding the financial condition and history of the debtor or to reconstruct the debtor's financial affairs. *Wazeter,* 209 B.R. at 227. Intent is not an element of a Section 727(a)(3) exception to discharge. *Id.*

> A debtor is not required to keep books or records in any particular form, nor do the creditors have to establish an intent to conceal the financial condition, as long as complete disclosure is made so that the creditors are not required to guess at what actually occurred.

*United States Fid. & Guar. v. Delancey (In re Delancey)*, 58 B.R. 762, 768 (Bankr. S.D.N.Y. 1986).

The party seeking the denial of a discharge has the burden of proving the inadequacy of the debtor's records. To determine whether the debtor's records are adequate, courts examine whether the records are the type kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience. *Wazeter*, 209 B.R. at 227. "Where debtors are sophisticated in business, and carry on a business involving significant assets, creditors have an expectation of greater and better record keeping." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 900 (7th Cir. 2002) (citation omitted).

Once the moving party shows that there is not sufficient written evidence to ascertain the debtor's financial condition and history, the burden shifts to the debtor to show that his failure to keep adequate records was justified in the circumstances. *Wazeter*, 209 B.R. at 227. To determine whether the inadequacy of the debtor's records was justifiable, courts look at a variety of factors, including the debtor's education, sophistication, business experience, size, and complexity of the debtor's business, debtor's personal financial structure, and any special circumstances. *Wazeter*, 209 B.R. at 230. *See also Dolin v. Northern Petrochemical Co. (In re Dolin)*, 799 F.2d 251 (6th Cir. 1986) (debtor's drug and gambling addictions did not justify his difficulty in recording his business transactions).

Courts will deny a discharge under Section 727(a)(3) when there is evidence of debtor misbehavior. For example, in *Delancey*, 58 B.R. at 762, the debtor failed to produce records

showing what he did with the proceeds from the sale of jewelry valued at over $269,000 and art valued at over $200,000. Debtor's failure to produce such records was not excused by his testimony that he simply did not maintain such records. *Id.* at 768. "The production of records to explain the disposition of substantial assets is a prerequisite to a debtor's relief from having to repay his creditors." *Id.* at 769.

<u>11 U.S.C. § 727(a)(5): Loss of Assets</u>

11 U.S.C. § 727(a)(5) provides that the court shall grant the debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." The purpose of this section was explained by the court in *Kovacs v. McVay (In re McVay)*, 363 B.R. 824 (Bankr. N.D. Ohio 2006):

> This section is derived from competing concerns: (1) the trustee and creditors' right to question the debtor about their financial affairs; and (2) the knowledge that debtors will not always be completely forthcoming with information about their financial activities. Section 727(a)(5) seeks to address these competing concerns by conditioning discharge on a debtor satisfactorily explaining any prepetition diminution or loss of asset. In order to achieve this, paragraph (a)(5) requires debtors to disclose all vital information; there is no requirement of mal-intent or scienter. In addition, it does not matter under § 727(a)(5) how the loss or deficiency occurred. For example, money spent on illegal activities does not run afoul of § 727(a)(5). Section 727(a)(5) is simply concerned with the adequacy of the debtor's explanation.

*Id.*, 363 B.R. at 830-831 (citations omitted).

To satisfy her initial burden of proof, the trustee must show two things: first, that the debtor had a cognizable ownership interest in a specific asset, and second, that the debtor's interest existed at a time not too far removed from when the petition was filed. *Id.* at 831. Once the trustee has met his burden, the debtor must satisfactorily explain the loss. The standard for a satisfactory explanation under § 727(a)(5) "is one that is reasonable under the circumstances." *Id.* (quoting *Lacy Wholesale & Main Factors v. Bell (In re Bell)*, 156 B.R. 604, 605 (Bankr. E.D. Ark. 1993)). A reasonable explanation involves capacity for verification. The explanation should enable a trustee

9

11-03057-dof    Doc 20    Filed 12/29/11    Entered 12/29/11 15:08:25    Page 9 of 13

to investigate the circumstances of the loss. *Id*.

Analysis

The Plaintiff argues that the Defendant has not provided her with enough information to ascertain his financial condition and to track this condition with substantial accuracy. The Plaintiff also argues that the Defendant has not satisfactorily explained the loss of assets or the deficiency of assets to meet the Defendant's liabilities. In particular, the Trustee focuses on the receipt of the settlement proceeds and the Defendant's inability to explain with exactitude the expenditures of those monies. In response, the Defendant argues that he has supplied as much information as he possibly can and that he cannot give more information because of the unfortunate destruction of his records when he moved from his former marital home. Further, the Defendant argues that he has explained the expenditures of the settlement proceeds with enough specificity to allow the Trustee the ability to determine his financial state.

As an initial matter, the Court does accept the Defendant's argument that when he received the settlement proceeds in 2007 he was not under any duty to keep meticulous records of the receipt or disbursement of these funds. The Court finds that the imposition of this duty, without any evidence of an intent to file bankruptcy or seek other relief, is unduly burdensome. The Court also accepts as true the Defendant's explanation that his records were inadvertently destroyed in 2008 when he moved from his marital home.

After making these conclusions, however, the Court does not see a similar explanation for the Defendant's efforts after he filed his Chapter 7 petition with this Court. Most notably, the Defendant's handwritten explanation accounts for approximately $294,800 of the $345,651.07 that he received in October, 2007. While the Court does allow some slippage for normal personal expenses that the Defendant undoubtedly incurred, the Court also notes that the Defendant received supplemental income during this time that would pay these expenses.

More troubling, however, is the Defendant's late admission at Trial that he purchased a Mercury Sable in an unknown amount from his brother and that he purchased the 2006 Mountaineer from his brother who is employed by Sesi. As the Defendant testified at Trial, these records would be readily available from his brother, and that he merely needed to ask for these records. The Defendant did not take any such action.

Second, the Defendant failed to disclose the Charles Schwab account in his handwritten response or in the responses to discovery. Again, disclosure of this account did not occur until the Defendant testified at Trial. The Defendant did not give a satisfactory explanation for this omission of a significant amount of the settlement proceeds.

Third, the Defendant failed to take any action to obtain the judgment of divorce which is a matter of public record. While the Court notes that Plaintiff's counsel has the same access as the Defendant, it is not incumbent upon the Trustee to track down these documents, especially when the Defendant should have had a copy in his possession. In that regard, while the Court may accept the Debtor's explanation of the unfortunate loss of financial records during his move from his house to an apartment, the judgment of divorce had to have been entered after the Defendant moved into his apartment.

Fourth, the Defendant failed to supply the Trustee with certain key information regarding his father and his ex-wife. While the Court was intrigued by the discourse between counsel and the parties regarding the form of the questions asked in regard to these names and addresses, the Defendant was not forthcoming in giving this information to the Plaintiff. Moreover, the Court notes that the scant evidence supplied by the Defendant in regard to the repayment of his father shows that his father received a deposit of $35,000, which is in direct contradiction to the $45,000 disclosed by the Defendant. Although the Defendant did testify that he paid his father with a check, as well as cash, there is still no explanation for this significant difference.

11

11-03057-dof    Doc 20    Filed 12/29/11    Entered 12/29/11 15:08:25    Page 11 of 13

The Court also notes that the details regarding the Defendant's ex-wife were not forthcoming and the failure to supply the judgment of divorce, which should be readily available and a matter of public record, could support in part the Defendant's assertions in Exhibit 3 as to the existence of the 2006 Mountaineer, as well as the payment to his ex-wife of $13,000 and perhaps the payments on the marital home that totaled $12,000. Again, if the statements in the Defendant's report are true, it would be in the best interests of the Defendant to produce a copy of the judgment of divorce to substantiate a portion of his report.

The Defendant also testified that he tried to get copies of his accounts with National City, but he was not successful. A close review of the Defendant's testimony leads this Court to conclude that while the Defendant may have tried to obtain these documents, he did not try very hard. Coupled with the Defendant's complete failure to obtain documents from his brother regarding the purchase of two vehicles, as well as the unexplained Charles Schwab account and the missing judgment of divorce, the Court concludes that the Defendant did not sufficiently act to explain to the Trustee his assets and did not take the necessary steps to give the Trustee all documents, records, and papers to ascertain his financial condition. Moreover, the Court finds that the Defendant was not justified under the circumstances of this case in regard to his failure to have these documents. As a result, the Plaintiff could not adequately investigate the Debtor's financial affairs and condition.

Taking a broader view of this case, the Court considered Defendant's arguments that the information requested by Plaintiff had no purpose or utility for the Trustee's administration of the estate. Defendant may be correct in the abstract and perhaps even in this case. The Plaintiff, however, has been precluded from getting a clear picture of Defendant's assets and at least in as seen in this case, from initiating possible fraudulent conveyance actions against Defendant's father and ex-wife, as well as gathering assets that the Debtor may have, such as the Charles Schwab account

and the Mercury Sable, which were not disclosed until Trial. While the Court can not state with certainty that the disclosure of this information would lead to recoverable assets and distribution to unsecured creditors, the Court can not rule this possibility with any certainty either. In the end, the Debtor either had, or has, access to this information and did not take sufficient action to explain how he arrived at his current financial situation.

For these reasons, the Court concludes that the Debtor/Defendant is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(3) and (a)(5). As Plaintiff withdrew her counts based on 11 U.S.C. § 727(a)(2) and (4) at the November 22, 2011, Trial, the Court denies any relief to Plaintiff on those counts. Counsel for the Trustee is directed to prepare a judgment denying the Defendant his discharge pursuant to these sections and to submit this judgment to the Court after approval of Defendant's counsel or compliance with the Court's notice of presentment procedure.

**Signed on December 29, 2011**

                                        **/s/ Daniel S. Opperman**
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**